No. 23-4221

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Appellee*

v.

MICHAEL DAVID, II,
*Appellant*

On Appeal from the United States District Court
for the Western District of Virginia
Roanoke Division (Hon. Michael F. Urbanski)

Brief of Appellant

| | |
|---|---|
| **Juval O. Scott** | **Christopher Kavanaugh** |
| Federal Public Defender | United States Attorney |
| for the Western District of Virginia | for the Western District of Virginia |
| | |
| **Benjamin Schiffelbein** | **S. Cagle Juan** |
| Assistant Federal Public Defender | Assistant United States Attorney |
| 210 First Street SW, Ste. 400 | 255 W. Main Street. |
| Roanoke, VA 24011 | Charlottesville, VA |
| (540)777-0880 | (434)293-4283 |
| | |
| *Counsel for Appellant* | *Counsel for Appellee* |

# Table of Contents

| | |
|---|---:|
| Table of Authorities | ii |
| Issue Presented | 1 |
| Standard of Review | 1 |
| Statement of Jurisdiction | 2 |
| Statement of the Case | 2 |
| Statement of Facts | 4 |
| Summary of Argument | 9 |
| Argument | 9 |
| Conclusion | 15 |

# Table of Authorities

Page(s)

Cases

*United States v. Dennison,*
  925 F.3d 185 (4th Cir. 2019) ............................................................................... 1
*United States v. Gilliam,*
  167 F.3d 628 (D.C. Cir. 1999) ........................................................................... 10
*United States v. Jones,*
  16 F.3d 487 (2nd Cir. 1994) ....................................................................... 10 - 13
*United States v. Moye,*
  454 F.3d 390 (4th Cir. 2006) ............................................................................. 10
*United States v. Redd,*
  161 F.3d 793 (4th Cir. 1998) ...................................................................... 13 - 14

Statutes

18 U.S.C. § 924(c) ................................................................................................. 12
28 U.S.C. § 1291 ................................................................................................. 2, 7

## Issue Presented

Did the court err in finding that Mr. David possessed a firearm based on testimony from a police officer that he believed the item in question was a firearm, even though no eyewitnesses observed a firearm, no firearms characteristics were captured by surveillance footage, and no firearm was recovered, and based on the uncorroborated and inarticulable conclusion of an officer that Mr. David was the person in question, though he could not identify any distinguishing features of Mr. David or the person in question.

Though Mr. David raised other issues at his revocation hearing, he does not assert them here. Nor does he appeal his sentence, even though it was above guidelines, given that this would have been his second revocation in short order and the circumstances surrounding the violation. Instead, he argues that the district court clearly erred in finding that he violated his conditions of supervised release.

## Standard of Review

This court reviews the district court's decision to revoke a defendant's supervised release for abuse of discretion. *See United States v. Dennison*, 925 F.3d 185, 190 (4th Cir. 2019). And the court reviews the

1

district court's underlying factual findings for clear error. *See id.* Mr. David argues that the district court's factual findings were erroneous, even under this deferential standard, given the absence of evidence and the vagueness of the evidence introduced.

## Statement of Jurisdiction

Mr. David appeals from the final judgement entered against him after the court revoked his supervised release and imposed an above-guideline sentence of 18 months and two years of additional supervised release. This court has jurisdiction pursuant to 28 U.S.C. § 1291.

## Statement of the case

Mr. David was originally sentenced to a period of incarceration followed by three years of supervised release. JA 1. While on supervised release, Mr. David violated and received a sentence of nine months. JA 1. He was released in July of 2022. JA 1. Between July and December of 2022, Mr. David was alleged to have violated several conditions of his supervision:

- He was alleged to have violated mandatory condition 4 for using a controlled substance because a police report indicated that he overdosed on a substance on August 19, 2022;

2

- He was alleged to have violated standard condition 9 for failing to report law enforcement contact from the same incident on that same date;

- He was alleged to have violated standard condition 8 because he was found to have been in a vehicle with someone who eluded from police on August 28, 2022;

- He was alleged to have violated standard condition 9 for failing to report law enforcement contact from that same incident on that same date;

- He was alleged to have violated standard condition 10 for possessing a firearm on November 5, 2022 in an incident captured on surveillance footage;

- He was alleged to have violated special condition 5 for residing in a residence that was not free of firearms.

The last condition was dismissed by the Magistrate and was not before the district court at the final hearing. JA 44. Before the hearing began, the government asked the court to dismiss the violations related to the August 19 incident, as the government conceded that it did not have sufficient evidence to support a violation. JA 47. Mr. David contested

3

each remaining violation. After a pause in Mr. David's hearing, the probation officer identified that Mr. David had contacted him related to the August 28 incident, and the government moved to dismiss that violation. JA 127. The court was left with two alleged violations by the conclusion of the hearing, and the court found Mr. David to have committed one of them—that he possessed a firearm on November 5, 2022. JA 186.

## Statement of the facts

Mr. David began serving his term of supervised release on July 6, 2022. This was his second attempt at supervision, having been violated and sentenced to a period of incarceration in February of the same year. Between July 6 his arrest in December of 2022, he was alleged to have violated the conditions of his release in several ways. The court only found that one of the allegations was substantiated by evidence. That allegation is summarized below.

In November of 2021, several individuals congregated in downtown Roanoke in a parking lot. JA 134. Why they arrived, what they were doing, or how the people were connected was not made a part of the record and has not been made clear. What is clear is that this gathering resulted

in a tragedy—a young man was shot at close range and driven over as his shooter fled the scene. Surveillance cameras captured the shooting and several of the individuals as they arrived and fled from the area. Police attempted to discover who was present at the scene, and some police officers believed that they could identify one of the persons as Mr. David. JA 51. This person was seen arriving in a blue car and wore a sweatshirt with an identifiable logo such that one could track his movements across the different surveillance cameras. JA 54. This person was referred to as the "blue car individual" in some of the testimony, and was ultimately identified by Officer Flippen to be Michael David. This identification is one of the issues that Mr. David contests.

The surveillance footage was examined by law enforcement, but it was not sent to any forensic laboratory for any analysis. JA 66. Nor was the surveillance footage enhanced in any way. Mr. David's probation officer testified that a person at the scene who possessed what police thought to be consistent with a firearm was someone who "appears to look like Michael David." *See* JA 74. The probation officer conceded that Mr. David had dark complexion, and the person in the footage appeared to have medium to dark complexion. JA 83 – 85. Additionally,

5

Mr. David allegedly told his probation officer that he was the person identified in a still shot, but the details of that statement were vague. *See* JA 84. The probation officer did not make a positive identification that the person depicted in the footage was Mr. David, and he agreed that no distinguishing features of Mr. David were observable in the footage. JA 81.

To prove that the item carried by the blue car individual was a firearm, police called Special Agent Bill Engle, employed by the Roanoke City Police and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Agent Engle testified that he believed the item in the individual's hand was a firearm. JA 55 This opinion was based on the fact that the object was consistent with a firearm, *see id*, and based on how the person who held it was acting, JA 56. In particular, Agent Engle thought that the person's behavior in pulling the item from his "waistband" and "ducking behind cars" supported his conclusion. JA 56. Agent Engle also testified that people wear cellphones on their hips and might wear jackets or hoodies that cover the cellphone. JA 71. And as far as the item's characteristics were concerned, Agent Engle testified that it appeared to have "a handle and a top mechanism of some sort that

6

goes forward." JA 58. In context, Agent Engle is not testifying that the top mechanism can move or moves back and forth (like a slide on a gun), as no observations were made that the top mechanism moved, but that the item appears to form an L shape (consistent with a firearm). JA 58. On cross examination, Agent Engle admitted that the item might not be a firearm, and merely that it "appears that it could be a firearm." JA 69. But that opinion was "not definitive" as the object could be any number of things. No firearm was recovered at any point from Mr. David—either when he was arrested or in any search of his residence. Indeed, it does not appear that his residence was ever searched for a firearm. Nor was any other testimony introduced that could support a conclusion that Mr. David possessed a firearm.

Another witness, Officer Flippen, testified that he definitively could tell that the person identified as the blue car individual was Mr. David. JA 135. He agreed that he did not have any special powers of observation and had not received any specialized training in facial recognition. JA 141. He was not able to identify any unique markings on the blue car individual, nor could he see from available footage what color the person's eyes were or hair was. JA 144. He did not see a tattoo

8

on the person, though Mr. David has a tattoo on his face. Despite not being able to identify how he could tell that the blue car individual was Mr. David, he maintained that he was 100% confident in his identification. He is, by his own account, pretty good with faces.

Although the case against Mr. David began with several alleged violations, by the end of the hearing, the court was only considering two: whether Mr. David violated the conditions of his release by associating with someone he knew was engaged in criminal activity, and whether he violated the law by possessing a firearm. The court did not find that the government met its burden to prove that Mr. David violated standard condition 8 on August 28.

But the court did find that the government proved that Mr. David was the person identified as the blue car individual. The court disregarded Mr. David's statements to probation and it did not consider the evidence that other officers told Agent Engle that Mr. David was that person. Instead, the court relied on Officer Flippen and found his testimony credible. Notably, the court did not make its own independent finding that the person was Mr. David.

8

As to whether Mr. David possessed a firearm, the court relied on its own observations as well as the testimony of Agent Engle. The court noted that the behavior of the person it believed was Mr. David supported the conclusion that he possessed a firearm. After all, that person pulled the item from his waistband immediately after a shooting—similar to other individuals—took a defensive position, and then deposited the item back in his waistband while running away.

## Summary of Argument

The court erred in finding both that Mr. David was the person identified as the blue car individual and that that person possessed a firearm. Neither conclusion was supported by sufficient evidence. Given the paucity of evidence, this court should reverse the district court even though that courts findings are entitled to great deference.

## Argument

Though the government need not prove beyond a reasonable doubt that Mr. David possessed a firearm, it still had to carry its burden by a preponderance of the evidence. It is conceivable that the government could carry this burden without having the alleged firearm in evidence. For example, an individual is depicted on surveillance footage pointing

9

what appears to be a firearm at another. A muzzle flash is observed, the victim drops to the ground, and is later found to have been shot after being treated and saved by medical personnel. Such evidence is not only compelling, but it also persuasively identifies that the shooter— whomever he was—used a firearm. The evidence in this case is a far cry from that. There was no evidence that anyone recovered an item and identified it as a firearm. Such evidence would persuasively countenance affirming the district court. *See United States v. Moye*, 454 F.3d 390 (4th Cir. 2006) (affirming conviction for felon in possession of a firearm when, among other evidence, firearms were affirmatively found). Eyewitness testimony is sufficient to support a finding—even one that requires evidence beyond a reasonable doubt—notwithstanding the fact that a firearm is never recovered. *See United States v. Jones*, 16 F.3d 487, 490 (2d Cir. 1994).

In *Jones*, the government sought to prove that the defendant used a firearm during a bank robbery. *See id.* at 490. The government relied almost exclusively on the eyewitness testimony of bank employees. These witnesses identified the defendant's picture from a photo array and each of them made in-court identifications. Additionally, clothes matching the

10

surveillance footage were recovered in when the defendant was arrested, though a firearm was never recovered. However, three bank employees testified that they saw a firearm and described it as silver with a white handle.

Even though those witnesses had no special firearm training, they did testify consistent with facts that supported finding that the defendant possessed a firearm. The defendant pushed the item into an employee's back and pointed it at another individual. *Id.* at 491. All of the witnesses agreed about the description of the firearm, and the item was possessed in a brazen bank robbery. Importantly, each of the witnesses saw the item and identified it as a firearm. *See id.*

Unlike in *Jones*, no witnesses positively identified the item in question as a firearm. Agent Engle testified that his opinion was that it was a firearm, and he testified that the object appeared consistent with something that was a firearm. But these are very different from the testimony of someone who actually saw the item. And unlike in *Jones*, the conclusion that the item was a firearm given the context of its possession is not persuasive. The court and the government relied on Mr. David acting like others who also may have possessed firearms, but no

11

evidence was presented that those individuals possessed firearms. Moreover, the fact that someone pulls something out after a shooting equally supports completely innocuous behavior. *Cf. United States v. Black* (cautioning against using completely innocuous facts to support reasonable suspicion). Unlike the shooter, Mr. David did not point this item at anyone consistent with how someone points a firearm. Had he done so, evidence would support the conclusion that this was a firearm. Nor was evidence presented that Mr. David made any statements consistent with having a firearm. *See United States v. Gilliam*, 167 F.3d 628, 637 (D.C. Cir. 1999) (finding sufficient evidence to support a conviction under 18 U.S.C. § 924(c) where, among other evidence, witnesses testified an object was pressed against the side of an individual while the defendant threatened to "blow his brains out").

Finally, Mr. David's argument is slightly different than the argument raised by many defendants that evidence does not support a conviction for possessing a firearm. *See generally United States v. Redd*, 161 F.3d 793 (4th Cir. 1998). In *Redd*, the court found sufficient evidence that the defendant possessed a firearm when two witnesses testified that the defendant used a gun. *See id.* at 797. Though one of the witnesses

12

qualified her statement, she testified that she observed the "barrel of the gun" and that it was "silver" and "looked like a gun." *See id.* And, like in *Jones*, the firearm was used to commit a robbery. Here, a firearm was allegedly pulled out after a shooting, even though the item was not pointed at the shooter despite the shooter being directly in front of the person.

Mr. David is not arguing that the court could not have found him to have possessed a firearm, but rather that the court abused its discretion in making that finding. Nor is Mr. David is arguing the government had to disprove all rational inferences from the facts (such as the item he possessed was a toy gun), but that, under the circumstances, when no eyewitness identifies the item as a firearm and no other witnesses support that conclusion with testimony, the court should not make that conclusion.

Although the government relied on the testimony of an ATF agent, nothing in the record demonstrated that his experience and familiarity with firearms helped him to conclude that the item was a gun. *See* Instead, he relied on his observations of how the person acted and that he observed the item to be consistent with something that looks like a

13

firearm. Neither of those conclusions should be entitled to any deference, nor should the district court's acceptance of those conclusions without providing identifying why it found those conclusions persuasive.

The same arguments demonstrate why the lower court erred in concluding that Mr. David was the person identified as the blue car individual. No eyewitness presented such testimony. Instead, an officer claimed he was able with 100% confidence identify Mr. David on the surveillance footage despite not being able to articulate why he could make that identification. Inarticulable conclusions cannot support an officer's reasonable suspicion that crime is afoot, and they should not be able to support a conclusion that someone is another without more. This is not to say that the government must always present evidence to corroborate a person's identification. But when the government relies on an officer to view surveillance footage that does not capture any specific details of a person and when no identifying characteristics of a person can be observed other than his skin color and clothing (which is not particularized to the defendant), it must present more. And the court erred by relying on such a barebones conclusion.

14

## Conclusion

Even though this Court defers greatly to the district court's factual findings, the paucity of evidence in this case warrants reversal. The district court found that Mr. David possessed a firearm even when no firearm was recovered, when no eyewitness testified that Mr. David possessed a firearm, when no witness presented evidence that Mr. David made any statements about possessing a firearm, and when the only evidence showing the firearm was surveillance footage that captured an object shaped like a firearm even though no other characteristics of a firearm can be seen. The court also erred in finding that Mr. David was the person who possessed the firearm by deferring to an officer who was unable to identify any distinguishing features of Mr. David or the suspect, yet concluded with 100% certainty that his identification was accurate. This court should not allow district courts to hide behind the standard of review when relying on such shaky evidence.

Respectfully submitted,

/s/ Benjamin Schiffelbein
Counsel for Mr. David
210 First Street SW, Ste 400
Roanoke, VA 24011
Benjamin_Schiffelbein@fd.org

15